In the Matter of Samuel J. Concemi.

Suffolk. December 6, 1995. - March 28, 1996.

Present: Liacos, C.J., Wilkins, Abrams, Greaney, & Fried, JJ.

*Attorney at Law,* Disciplinary proceeding, Disbarment.

Where S.J.C. Rule 4:01, § 12 (3), 365 Mass. 696 (1974), provides that a certificate of conviction is conclusive evidence of the commission of that crime in a disciplinary proceeding against an attorney based on that conviction, the issue of guilt or innocence may not be relitigated in such a proceeding. [328-329]

In a disciplinary proceeding brought against an attorney for his conviction by a Federal jury of thirty-five felony counts of conspiracy to defraud a bank, bank fraud, and making false statements to a federally insured bank while acting in his capacity as a member of the bar, the appropriate disciplinary sanction to be imposed where there were no special mitigating circumstances is disbarment. [329-332]

Information filed in the Supreme Judicial Court for the county of Suffolk on February 20, 1991.

The case was heard by *Lynch,* J.

*Terence M. Troyer,* Assistant Bar Counsel.

*John A. Mizhir* for the respondent.

*Robert J. Hoffman & Henry H. Thayer* for the Massachusetts Conveyancers Association, Inc., amicus curiae, submitted a brief.

Abrams, J. Samuel J. Concemi was convicted, after a jury trial in the United States District Court for the District of Massachusetts, of thirty-five felonies including one count of conspiracy to defraud ComFed Savings Bank (ComFed), a federally insured bank, in violation of 18 U.S.C. § 371 (1988), seventeen counts of bank fraud in violation of 18 U.S.C. § 1344 (1988 & Supp. 1993), and seventeen counts of making false statements to a federally insured bank in violation of 18 U.S.C. § 1014 (1988 & Supp. 1993). Following these convictions, bar counsel filed a petition for discipline with the Board of Bar Overseers (board) recommending that Concemi be

disbarred from the practice of law. The board recommended a three-year suspension. After hearing, a single justice of this court imposed a three-year suspension retroactive to May 3, 1991, the date of Concemi's temporary suspension. Bar counsel appeals. We conclude that Concemi should be disbarred.

1. *Facts.* A jury found that Concemi, with coconspirators Patricia A. Hajjar (a ComFed employee) and Walter Ribeck (a real estate broker and seller in some of the transactions), executed and concealed secondary financing agreements from ComFed in seventeen independent real estate closings in violation of ComFed's underwriting policies. Concemi was sentenced to thirty-six months of incarceration followed by two years of supervised release and ordered to pay restitution in the amount of $16,460[1] and a fine in the amount of $6,000. The United States Court of Appeals for the First Circuit affirmed these convictions. *United States* v. *Concemi*, 957 F.2d 942 (1st Cir. 1992), denial of habeas corpus aff'd, 14 F.3d 44 (1st Cir. 1994).

In December, 1993, and January, 1994, a hearing panel of the board conducted hearings on the issue of bar discipline following the convictions.[2] Bar counsel alleged that Concemi had committed a serious crime as defined in Supreme Judicial Court Rule 4:01, § 12 (2), 365 Mass. 696 (1974), and had violated Canon 1, DR 1-102 (A) (4), (5), and (6).[3] At the discipline hearing, Concemi testified, contrary to the certificate of conviction that ComFed was aware of and encouraged the secondary financing and that, indeed, it was the bank's policy to give loans to borrowers regardless of their ability to meet normal underwriting requirements. The hearing panel and board found this testimony convincing and determined that, in each transaction, a deviation agreement and a memo of

---

[1]This amount represents the legal fees Concemi received from ComFed for his work on the seventeen closings.

[2]Concemi previously had had his license to practice law temporarily revoked pending final disposition of the disciplinary proceedings commenced on the convictions. SJC Rule 4:01, § 12 (1), 365 Mass. 696 (1974).

[3]Supreme Judicial Court Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), and (6), as appearing in 382 Mass. 770 (1981), provides: "(A) A lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. (5) Engage in conduct that is prejudicial to the administration of justice. (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

sale were forwarded to ComFed along with the United States Department of Housing and Urban Development (HUD-1) statement, albeit without a cover letter. The hearing panel, citing ComFed's pressure on Concemi to commit the crimes, recommended suspension for a period of two years from the date of temporary suspension. The full board, while adopting the hearing panel's findings of fact and conclusions of law, rejected the recommendation and instead recommended that Concemi be suspended for three years, retroactive to the date of his temporary suspension. A single justice accepted that recommendation.

2. *Discussion.* We accord substantial weight to the determination of that hearing committee as "the sole judge of the credibility of the testimony presented at the hearing," S.J.C. Rule 4:01, § 8 (3), as amended, 415 Mass. 1304 (1993). See *Matter of Saab*, 406 Mass. 315, 328 (1989). However, in this case there are valid criminal convictions. For the jury to have convicted Concemi of bank fraud in violation of 18 U.S.C. § 1344, the jury had to conclude that Concemi knowingly executed or attempted to execute a scheme or artifice to defraud a federally chartered or insured financial institution. To convict him of making false statements, the jury had to conclude that the government proved beyond a reasonable doubt that (1) Concemi made or caused to be made a false statement or report to a bank upon an application, commitment, or loan, and that the false statement concerned a material fact; (2) Concemi acted knowingly; (3) the false statement or report was made for the purpose of influencing in any way the bank's action on the loan; and (4) the false statement or report was made to a bank whose deposits were then insured by the Federal Savings and Loan Insurance Corporation. *Williams* v. *United States*, 458 U.S. 279, 284 (1982). The facts underlying the convictions show that ComFed did not receive copies of the accurate deviation agreements and memos of sale. Thus, Concemi's convictions conclusively establish that Concemi defrauded his client, ComFed, in violation of 18 U.S.C. § 1344 and that Concemi made or caused to be made false statements in violation of 18 U.S.C. § 1014.

The board erred in taking evidence on the facts underlying Concemi's criminal convictions and in making factual findings inconsistent with those convictions. "A certificate of a conviction (which has not been reversed) of an attorney for

any crime shall be conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against him based upon that conviction. . . ." S.J.C. Rule 4:01, § 12 (3), 365 Mass. 696 (1974). Our rule conclusively determines that the issue of guilt or innocence is not to be relitigated in a bar discipline proceeding. "Basic respect for the integrity and finality of a prior unreversed criminal judgment demands that it be conclusive on the issue of guilt and that an attorney not be permitted to retry the result at a much later date . . . ." *Matter of Hiss*, 368 Mass. 447, 450 (1975). We therefore reject Concemi's argument that the hearing panel, as a finder of fact, is entitled deference as to the facts it found concerning his criminal convictions. Accord *Matter of Welansky*, 319 Mass. 205, 208-209 (1946) ("The average citizen would find it incongruous for the Commonwealth on the one hand to adjudicate [a respondent] guilty and deserving of punishment, and then, on the other hand, while his conviction and liability to punishment still stand, to adjudicate him innocent and entitled to retain his membership in the bar").

Having concluded that the certificate of conviction is conclusive as to the conduct alleged therein, we turn to the question of the appropriate disciplinary sanction. We must decide "whether the sanction imposed by the single justice on the respondent is markedly disparate from the sanctions imposed in similar cases." *Matter of Hurley*, 418 Mass. 649, 653 (1994), cert. denied, 115 S. Ct. 1401 (1995), citing *Matter of Palmer*, 413 Mass. 33, 37-38 (1992), and *Matter of Neitlich*, 413 Mass. 416, 421 (1992). See *Matter of Alter*, 389 Mass. 153, 156 (1983). The primary factor for our consideration is "the effect upon, and perception of, the public and the bar." *Matter of McInerney*, 389 Mass. 528, 535 (1983), citing *Matter of Alter*, *supra*. We must consider what measure of discipline is necessary to protect the public and deter other attorneys from the same behavior. *Matter of Saab*, *supra* at 328.

We start with the premise that disbarment or indefinite suspension is the usual sanction imposed for a felony conviction. See *Matter of Knox*, 412 Mass. 569 (1992); *Matter of Paris*, 9 Mass. Att'y Discipline Rep. 257 (1993). "Felony convictions generally require disbarment." *Id.* at 257. Accord ABA Standards on Imposing Lawyer Sanctions § 5.11 (a) (1986) (Disbarment appropriate when "a lawyer engages in serious criminal conduct, a necessary element of

which includes intentional . . . misrepresentation [or] fraud . . . or an attempt or conspiracy or solicitation of another to commit any of these offenses").[4]

Concemi has shown no special mitigating circumstance that would justify deviation from the usual and presumptive sanction of disbarment following conviction of a serious crime. See *Matter of Alter, supra* at 157 ("We emphasize the term 'special,' since it is apparent that 'typical' mitigating circumstances have not diverted the Justices from the imposition of disbarment or suspension"). Contrary to Concemi's assertions, neither court-ordered restitution nor the severity of his criminal sentence are special mitigating circumstances. Nor is his reputation in the community justification for a less substantial sanction. See *Matter of Saab, supra* at 327 ("The fact that the respondent appears to have an excellent reputation in his community and among certain judges and attorneys is not the sort of 'special' mitigating factor to which we have accorded weight").

This case is analogous to *Matter of Norton*, 5 Mass. Att'y Discipline Rep. 272 (1987), in which the single justice determined that the crimes of conspiracy to defraud the United States, falsely testifying before a grand jury, and obstruction of justice "involve misconduct by the attorney in connection with his practice of law. They are serious crimes concerned with lack of truthfulness. Disbarment is the only discipline that is appropriate in this case . . . ." *Id.* at 273.

---

[4]For the most part, those attorneys who have received a suspension have escaped the greater sanction of disbarment or indefinite suspension due to special mitigating circumstances. See, e.g., *Matter of Crowley*, 6 Mass. Att'y Discipline Rep. 75 (1989) (three-year suspension after conviction for distribution of cocaine; mitigating factors included chemical dependency, participation in Alcoholics Anonymous and Narcotics Anonymous, personal commitment to staying sober, public commitment to pro bono work); *Matter of Rendle*, 5 Mass. Att'y Discipline Rep. 310 (1987) (two-year suspension after conviction for aiding and abetting the unlawful receipt of a gratuity; offense unrelated to practice of law; no specific criminal intent; other mitigating circumstances); *Matter of Hogan*, 4 Mass. Att'y Discipline Rep. 49 (1984) (temporary suspension lasting seven years for conviction of larceny in connection with corporate overcharges for solid waste disposal; wrongdoing essentially civil in nature); *Matter of Campbell*, 4 Mass. Att'y Discipline Rep. 13 (1985) (two-year suspension after conviction for motor vehicle homicide while under the influence of an intoxicating substance; attended Alcoholics Anonymous and group therapy; sober for some time; well informed in law and fully qualified; kept informed of recent developments in the law; no wrongdoing while acting as member of bar).

Like Norton, Concemi committed his felonious acts in connection with his practice of law, a factor we consider in aggravation.[5] Additionally, Concemi's felonious activity directly harmed his client. He may have contributed to harming the public welfare in a way which resulted in ComFed being taken over by the Federal Deposit Insurance Corporation and a loss between $500,000 and $1,000,000 to the public treasury.[6] There is no mitigation in the fact that Concemi's crimes were committed in cooperation with a bank employee. His duty was to his client, the bank.

We decline to adopt Concemi's suggestion that the felonies of bank fraud and making false statements to a bank are a categorical exception to the presumption of disbarment or indefinite suspension following conviction for a felony. Attorneys have been disbarred or indefinitely suspended or have resigned in lieu of disbarment in several recent cases involving criminal activity similar to that of the respondent. See, e.g., *Matter of MacClary*, 9 Mass. Att'y Discipline Rep. 207 (1993) (resigned in lieu of disbarment after conviction for making false statements to a bank); *Matter of Lowe*, 9 Mass. Att'y Discipline Rep. 195 (1993) (consented to disbarment after conviction for bank fraud and conspiracy); *Matter of Caviston*, 7 Mass. Att'y Discipline Rep. 49 (1991) (resigned in lieu of disbarment after conviction for bank fraud in connection with "check kiting"); *Matter of Cooperstein*, S.J.C. No. BD-93-42 (May 9, 1994) (indefinitely suspended after conviction for making a false statement to a bank). These cases make it clear that a three-year suspension in this case would be a markedly disparate result.[7] Disbarment is the appropri-

---

[5]This distinguishes both respondent and *Matter of Nickerson, post* 333 (1996), from cases such as *Matter of Griffin*, S.J.C. No. BD-93-31 (March 29, 1995), *Matter of Behenna*, S.J.C. No. BD-92-72 (October 7, 1994), and *Matter of Bedinger*, S.J.C. No. BD-92-34 (March 11, 1994), in which attorneys received less substantial bar sanctions following similar conduct undertaken in their capacities as private citizens.

[6]We reject Concemi's contention that the fact that restitution was ordered in the amount of $16,460 rather than between $500,000 and $1,000,000 indicates that he was not at least partially responsible for the greater loss.

[7]The only case in which a three-year suspension was imposed was *Matter of Jamieson*, S.J.C. No. BD-93-96 (June 2, 1994). As we noted in *Matter of Nickerson, supra* at 335-336, the three-year suspension of Scott Jamieson was markedly disparate and should not be followed in cases involving felony convictions.

ate sanction for an attorney convicted of thirty-five felony counts for conspiracy to defraud a bank, bank fraud, and making false statements to a federally insured bank while acting in his capacity as a member of the bar. The judgment of a three-year suspension is vacated and a judgment of disbarment[8] retroactive to May 3, 1991, the date of the temporary suspension, shall be entered.

*So ordered.*

---

[8]We note that this holding is in accord with the vast majority of other jurisdictions which have published opinions relating to similar crimes. See *People* v. *Hilgendorf*, 895 P.2d 544 (Colo. 1995) (conviction of making false statements to a bank; disbarred); *In re Campbell*, 635 A.2d 933 (D.C. 1994) (conviction for bank fraud; disbarred); *Matter of Brewster*, 587 A.2d 1067 (Del. 1991) (pleaded guilty to bank fraud; disbarred); *The Florida Bar* v. *Forbes*, 596 So. 2d 1051 (Fla. 1992) (pleaded guilty to false statements; disbarred retroactively to date of suspension); *Matter of Brannon*, 249 Ga. 404 (1982) (pleaded guilty to materially false statement; voluntarily surrendered license to practice law); *State ex rel. Oklahoma Bar Ass'n* v. *Hobbs*, 848 P.2d 551 (Okla. 1993) (pleaded guilty to bank fraud, money laundering, and embezzlement; disbarred); *Matter of Hirsch*, 214 A.D.2d 271 (N.Y. 1995) (pleaded guilty to conspiracy to commit bank fraud, wire fraud, submitting false statements, and bank fraud; automatically disbarred); *Matter of Goldsmith*, 301 S.C. 29 (1990) (pleaded guilty to making a materially false statement to a bank; consented to disbarment); *Matter of Looby*, 297 N.W.2d 487 (S.D. 1980) (convicted of making false statement; disbarred); *Searcy* v. *Texas*, 604 S.W.2d 256 (Tex. 1980) (convicted of making false statements to bank; disbarred). But see *Office of Disciplinary Counsel* v. *Lash*, 68 Ohio St. 3d 12 (1993) (pleaded guilty to bank fraud for overstating income by $10,000 in order to obtain a personal loan; one-year suspension; mitigating circumstances included divorce, full cooperation with authorities, medical expenses for mentally retarded daughter, and that bank incurred no loss); Statewide Grievance Comm. *v.* Glass, Conn. Superior Ct. No. CV95 0144258 S (Sept. 6, 1995) (convicted of one count of making false statements, received reprimand in light of mitigating circumstances including lack of experience, full cooperation with authorities, forms prepared by another party, support of friends and family, and learning disability).