IN THE MATTER OF MARGUERITE NICKERSON.

Suffolk. December 6, 1995. - March 28, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, GREANEY, & FRIED, JJ.

*Attorney at Law,* Disciplinary proceeding, Suspension.

In a disciplinary proceeding against an attorney who had pleaded guilty to fourteen counts of making false statements to a federally insured bank in violation of 18 U.S.C. § 1014, the appropriate discipline to be imposed, in the circumstances, was an indefinite suspension from the practice of law. [335-337]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on May 26, 1995.

The case was heard by *O'Connor*, J.

*Nancy E. Kaufman*, Assistant Bar Counsel.

*David Nalven* (*Thomas A. Bockhorst* with him) for the respondent.

ABRAMS, J. The respondent, Marguerite Nickerson, pleaded guilty in the United States District Court for the District of Massachusetts to fourteen counts of making false statements to a federally insured bank in violation of 18 U.S.C. § 1014 (1988 & Supp. V 1993). Bar counsel filed a petition for discipline on the basis of the conviction,[1] alleging that Nickerson had been convicted of a serious crime as defined in S.J.C. Rule 4:01, § 12 (2), 365 Mass. 696 (1974), and that her conduct violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), and (6),[2] and Canon 7, DR 7-102

---

[1]Nickerson had had her license to practice law temporarily revoked pending final disposition of the disciplinary proceedings commenced on the conviction. SJC Rule 4:01, § 12 (1).

[2]Supreme Judicial Court Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), and (6), as appearing in 382 Mass. 769 (1981), provide: "(A) A lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. (5) Engage in conduct that is prejudicial to the administration of justice. (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

(A) (3), (A) (7), and (B) (1).[3] Bar counsel recommended that Nickerson be indefinitely suspended from the practice of law. The hearing panel recommended, and the Board of Bar Overseers (board) agreed, that she be suspended for three years. After hearing, a single justice of this court accepted the board's recommendation and ordered a three-year suspension, retroactive to June 28, 1993, the date of Nickerson's temporary suspension. Bar counsel appeals. We conclude that the imposition of a three-year suspension is markedly disparate from other bar discipline cases based on felony convictions. On consideration of all the circumstances, we agree with bar counsel that the appropriate sanction in this case is indefinite suspension.

Marguerite Nickerson was admitted to practice law in Massachusetts in 1978. Her practice concentrated on real estate law. In 1986, Nickerson joined a law firm as counsel, and became a nonequity partner in 1988 or 1989.[4] She was part of a team that handled real estate closings for Dime Savings Bank of New York (Dime). In connection with these closings, Nickerson executed and signed Federal Housing and Urban Development (HUD-1) settlement statements and Federal National Mortgage Association (Fannie Mae) affidavits that falsely indicated receipt of a cash deposit and the absence of secondary financing. Both Dime and the law firm were aware that the certifications were false.

When the real estate market unexpectedly turned sour in the late 1980's, numerous Dime loans went into default. Robert Zimmerman, an equity partner at the law firm, Scott Jamieson, a second-year associate, and Nickerson were

---

[3]Supreme Judicial Court Rule 3:07, Canon 7, DR 7-102 (A) (3), (A) (7), and (B) (1), as appearing in 382 Mass. 785 (1981), provide: "(A) In his representation of a client, a lawyer shall not: . . . (3) Conceal or knowingly fail to disclose that which he is required by law to reveal. . . . (7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent. . . . (B) A lawyer who receives information clearly establishing that: (1) His client has, in the course of representation, perpetuated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal, except when the information is protected as a privileged communication."

[4]As a nonequity partner, Nickerson had supervisory responsibilities but was salaried rather than receiving a percentage of the profits.

indicted on Federal charges of making false statements to a federally insured bank.[5]

The issue at bar, like that in *Matter of Concemi, ante* 326 (1996), is the appropriate bar discipline in these circumstances. Bar counsel continues to argue that indefinite suspension is the minimal sanction appropriate following a felony conviction for making false statements in the practice of law. Nickerson, arguing mitigating circumstances and relying on the precedent of a three-year suspension in *Matter of Jamieson*, S.J.C. No. BD-93-36 (June 2, 1994), urges us to uphold the decision of the single justice.

We start with the premise that the discipline imposed should not be markedly disparate from that imposed in similar cases. *Matter of Alter*, 389 Mass. 153, 156 (1983). See *Matter of Concemi, ante* 326. However, "[e]ach case must be decided on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances." *Matter of the Discipline of an Attorney*, 392 Mass. 827, 837 (1984).

The two cases most similar to Nickerson's are *Matter of Concemi, ante* 326, and *Matter of Jamieson, supra*, both of which involved discipline of attorneys who signed and executed false HUD-1 forms submitted to federally insured banks in connection with their practice of law. *Jamieson*, like *Nickerson*, stemmed from the same law firm's representation of Dime Savings Bank. Jamieson was a second-year associate recently admitted to the bar and inexperienced in real estate matters. He cooperated fully with the Federal authorities and recognized the seriousness of his crime. The sentencing judge concluded that Jamieson executed the false HUD-1 statements while following the orders of partners, who urged him to do Dime's bidding. After consideration of the mitigating circumstances listed above, Jamieson and bar counsel stipulated to a three-year suspension. A single justice of this court accepted that recommendation.[6] We reject Nickerson's claim that she should receive the same term of suspension as Jamie-

---

[5]Charges were later dismissed as to Zimmerman. Jamieson pleaded guilty to five counts of making false statements to a federally insured bank.

[6]Jamieson's suspension was not made retroactive to his temporary suspension because Jamieson agreed, as part of his criminal sentencing, that he would not seek readmission to the bar until after his thirty-six month probation had ended.

son. The three-year suspension in *Jamieson* was not appealed to this court. Bar counsel's recommendation clearly deviated from the discipline imposed in other cases involving felony convictions. Bar counsel should not have agreed to recommend the three-year suspension. However, we are not bound by bar counsel's action. The *Jamieson* case is not to be followed.

In *Matter of Concemi, ante* 326, the attorney was convicted in Federal District Court of thirty-five felony counts including one count of conspiracy to defraud a federally insured bank, ComFed Savings Bank (ComFed); seventeen counts of bank fraud; and seventeen counts of making false statements to a federally insured bank. The indictments stemmed from Concemi's actions, in conspiracy with a ComFed employee and a realtor, of signing and submitting materially false HUD-1 statements to ComFed, a federally insured bank, on at least seventeen separate occasions. While the underlying actions in this case are similar to those in *Concemi*, we observe significant differences relevant to the sanction that ought be imposed in bar discipline proceedings.[7] First and foremost, Concemi was convicted, after a jury trial, of thirty-five felonies including conspiracy and bank fraud. The First Circuit, in affirming the convictions, specifically observed that the jury could reasonably conclude from the evidence that true and accurate accounts of the transactions were never forwarded to ComFed. *United States* v. *Concemi*, 957 F.2d 942 (1st Cir. 1992), denial of habeas corpus aff'd, 14 F.3d 44 (1st Cir. 1994).

By contrast, Nickerson pleaded guilty to fourteen counts of making false statements. She was neither charged with nor convicted of conspiracy or bank fraud. In Nickerson's case, there is substantial evidence, accepted by the sentencing court, that Dime both condoned and instigated the fraudulent behavior. Nickerson has cooperated with the authorities, providing both testimony and documentary evidence in the prosecution of others involved. She has accepted responsibility for her wrongdoing.

We also think it significant that Concemi was a sole practitioner who individually profited from his wrongdoing in the form of legal fees and continued representation. Concemi

---

[7]In *Matter of Concemi, ante* 326 (1996), we concluded that disbarment was the appropriate sanction.

was the sole decisionmaker whether to represent the bank once he had knowledge of the false statements. Nickerson, in contrast, was a salaried employee who received no direct profit from Dime's patronage. Although a nonequity partner with significant experience and supervisory responsibility, she was without authority to shape policy at the law firm.

Nickerson's case is in parity with *Matter of Cooperstein*, S.J.C. No. BD-93-42 (May 9, 1994), in which the attorney was indefinitely suspended after conviction for making a false statement to a bank. Imposing anything less than indefinite suspension on Nickerson would be disparate. We reaffirm that disbarment or indefinite suspension is the presumptive sanction following a felony conviction for actions undertaken in the practice of law.[8] *Matter of Knox*, 412 Mass. 569 (1992).

Indefinite suspension is necessary to protect the public perception of the bar. See *Matter of McInerney*, 389 Mass. 528, 535 (1983) (the primary consideration is "the effect upon, and perception of, the public and the bar"). "The question is not whether the respondent has been 'punished' enough. To make that the test would be to give undue weight to his private interests, whereas the true test must always be the public welfare." *Matter of Keenan*, 314 Mass. 544, 547 (1943). The public would not tolerate a more lenient sanction for an experienced attorney who was convicted of several counts of making false statements to a bank while engaging in the practice of law.

On balance, we conclude that a three-year suspension is markedly lenient and that the sanction of indefinite suspension is more appropriate. This matter is remanded to the Supreme Judicial Court for Suffolk County. The judgment of a three-year suspension is vacated and a judgment of indefinite suspension,[9] retroactive to June 28, 1993, shall be entered.

*So ordered.*

[8] A less substantial sanction would be justified if there had been no criminal conviction. See, e.g., *Matter of Eastwood*, S.J.C. No. BD-94-34 (October 4, 1994), and PR 90-26, 6 Mass. Att'y Discipline Rep. 428 (1990). See also *Matter of Alter*, 389 Mass. 153, 155 (1983) (felony conviction adds special concern in determining appropriate sanction).

[9] Indefinite suspension and disbarment are similar in that each requires at least a passage of five years prior to reinstatement. From a public perception viewpoint, indefinite suspension carries less opprobrium than disbarment.