## In the Matter of Alan H. Segal.

Suffolk. September 14, 1999. - November 16, 1999.

Present: MARSHALL, C.J., ABRAMS, LYNCH, & GREANEY, JJ.

*Attorney at Law*, Disciplinary proceeding, Suspension. *Collateral Estoppel.*
*Administrative Law*, Substantial evidence, Proceedings before agency.
*Evidence*, Administrative proceeding.

This court concluded that S.J.C. Rule 4:01, § 11, does not prevent the Board
of Bar Overseers from conducting a bar disciplinary proceeding after an at-
torney has been acquitted in a substantially similar criminal matter
[362-364]; and, in the circumstances of an attorney's acquittal in a criminal
prosecution, the fraudulent nature of the attorney's statements in the course
of certain real estate closings was not conclusively determined and,
consequently, the attorney's knowledge and intent were properly the subject
of consideration in a disciplinary proceeding before the board [364].
Substantial evidence, including live testimony, documentary evidence, and
unchallenged transcripts from a criminal trial in which the attorney was the
defendant, supported the conclusion of the Board of Bar Overseers that the
respondent attorney had committed violations of the Canons of Ethics in
connection with certain real estate closings. [364-367]
A two-year suspension from the practice of law was the appropriate discipline
to be imposed on an attorney for his making of false statements and mate-
rial omissions at certain real estate closings, in circumstances in which the
attorney, who had not been convicted of any crime, had substantial experi-
ence as a real estate attorney and had knowledge well before most of the
closings of the fraudulent financing scheme. [367-368]

INFORMATION filed in the Supreme Judicial Court for the county
of Suffolk on August 28, 1998.

The case was heard by *Ireland*, J.

*Stephen R. Delinsky* for the respondent.

*Nancy E. Kaufman*, Assistant Bar Counsel.

LYNCH, J. This is an appeal from a decision of a single justice
on an information filed in the county court by the Board of Bar
Overseers (board) recommending that the respondent be
suspended from the practice of law for two years. On February
25, 1994, a judge in the United States District Court for the
District of Massachusetts entered an order for a judgment of

acquittal terminating the prosecution of Alan H. Segal (respondent) for making false statements to a federally insured bank in violation of 18 U.S.C. § 1014 (1994). On September 30, 1996, bar counsel filed a formal petition before the board alleging ethical violations arising out of conduct which was the subject of the Federal prosecution. The board found ethical violations and recommended a two-year suspension.[1] After a hearing, a single justice of this court imposed a two-year suspension commencing on December 10, 1998.

The respondent asserts that the board's proceeding was barred by preclusion principles, the board's findings were not supported by substantial evidence, and the length of the suspension was disproportionately long. We reject each of the respondent's contentions and conclude that a two-year suspension is appropriate.

1. *Facts.* We summarize the facts found by a hearing committee of the board. The respondent was admitted to the Massachusetts bar in 1974. Since his admission, the respondent has engaged in a general legal practice with an emphasis on real estate matters. In the spring of 1987, the respondent was hired by the Dime Savings Bank of New York (Dime) as a closing attorney. On behalf of Dime, the respondent conducted all of the closings on the condominium units at Hawthorne Village in North Attleborough.

In order to facilitate the sale of the condominium units, the owner offered incentives to buyers, which included second mortgage financing, a decorating allowance, and cash credits. These incentives obviated the need for a buyer to make a down payment to purchase a condominium unit.

Charles McCormick became the lead condominium unit purchaser. He located and organized a syndicate of investors to buy condominium units. Attorney Thomas Behenna represented McCormick in the condominium unit sales and coordinated financing with the parties including second mortgages.[2]

The closings on the condominium units began in September, 1987. Dime acted as the mortgage lender to the McCormick

---

[1]The board concluded that the respondent violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4) and (6), as appearing in 382 Mass. 769 (1981); S.J.C. Rule 3:07, Canon 2, DR 2-110 (B) (2), as appearing in 382 Mass. 774 (1981); and S.J.C. Rule 3:07, Canon 7, DR 7-102 (A) (3), (5), (7) and (B) (1), as appearing in 382 Mass. 785 (1981).

[2]Behenna also purchased several of the condominium units for himself.

group and the respondent conducted the closings on behalf of Dime. Dime had a policy, of which the respondent was aware, against buyers financing their loans through second mortgages. The loan documents which Dime sent to the respondent expressly forbade the use of secondary financing. Furthermore, before becoming Dime's closing attorney, the respondent was told by Dime's executive vice-president to report any irregularities in the loan documents.

The respondent presided over closings on September 16, 1987, October 28, 1987, November 4, 1987, and December 1, 1987, where secondary loan financing was discussed. On September 16, the participants engaged in an argument, in front of the respondent, over who was to pay for preparing the second mortgages.[3] On October 28, one of the parties mentioned having "signed seconds a few minutes before" to which the respondent responded, "I can't hear that." On November 4, one of the parties noted that the purchase of the condominium unit was a "no-money-down deal" to which the respondent said, "I am not supposed to know that." Finally, on December 1, one of the parties told Behenna that he did not have a down payment for the condominium unit and was using a second mortgage. In front of the respondent, Behenna explained, "This is nothing to worry about; it's just a formality; this is the way we are doing all of them. It's okay to sign, go ahead and sign." Based on these transactions, the board determined that the respondent recognized that the condominium units were being purchased in conjunction with second mortgages, and by remaining silent, violated his affirmative obligation to inform Dime.

Included among the closing documents were regulatory forms, which the respondent had an obligation to see were complete and accurate, but which failed to disclose the existence of any secondary financing. Thus, the board concluded that, because the respondent knew of the second mortgages, he falsely submitted the documents and did not notify Dime about concerns he had regarding the forms' false information.

The respondent was charged in the Federal District Court with making false statements to a federally insured bank under 18 U.S.C. § 1014. At the close of the evidence, the judge allowed the respondent's motion for an acquittal because the

___

[3]Behenna testified before the hearing committee that the respondent had a "look of disgust on his face" during the discussion of secondary financing.

government failed to prove that the respondent made the statements for the purpose of influencing a federally insured bank.[4]

2. *Preclusion.* The respondent first contends on appeal that, because he was acquitted in United States District Court, the board is prohibited from bringing a subsequent disciplinary action against him arising from the same conduct. He relies on S.J.C. Rule 4:01, § 11, as appearing in 425 Mass. 1313 (1997), to support his position. The rule provides in part:

> "The acquittal of the respondent lawyer on criminal charges, or a verdict, judgment, or ruling in the lawyer's favor in civil, administrative, or bar disciplinary proceedings shall not require abatement of a disciplinary investigation predicated upon the same or substantially similar material allegations."

The respondent asserts that the interpretation of rule 4:01 is governed by the maxim, the expression of one thing is an implied exclusion of things omitted. See *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975), and cases cited. The respondent argues that, by expressly permitting the board to conduct further investigations after an acquittal, the rule impliedly denies the board the power to proceed with a bar disciplinary proceeding after an acquittal. The maxim on which the respondent relies "is not to be followed where to do so would frustrate the general beneficial purposes of the legislation." *Brady* v. *Brady*, 380 Mass. 480, 484 (1980), quoting *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, *supra.* Furthermore, each portion of a rule must be read in relation to the entire scheme to understand the relation of one part of a rule to the rule as a whole. Cf. *Saccone* v. *State Ethics Comm'n*, 395 Mass. 326, 334 (1985) ("We look . . . to the

---

[4]In allowing the motion for acquittal the judge wrote:

> "This Court hereby finds that there is insufficient evidence to warrant a jury to find, beyond a reasonable doubt, that any false statements contained in the HUD-1s [forms] were made 'for the purpose of influencing' the actions of the Dime Savings Bank of New York, FSB on loans. Rather the evidence establishes that the HUD-1s were made to Dime Real Estate Services of Massachusetts, which in turn issued the mortgage money directly from its bank account with the Union Bank of Lowell, Mass."

entire statutory scheme to determine the sense of the amendment in relation to the statute as a whole").

We conclude that S.J.C. Rule 4:01, § 11, does not prevent the board from conducting a bar disciplinary proceeding after an attorney has been acquitted in a substantially similar criminal matter.[5] The thrust of the rule is to permit the board to go forward with its business without regard to other criminal and civil proceedings.

In the absence of any specific provisions in the rule, general rules of collateral estoppel govern. It is well established that an acquittal in a criminal trial does not prevent civil proceedings addressing the same facts because civil sanctions require a different standard of proof than a criminal conviction. See *Krochta* v. *Commonwealth*, 429 Mass. 711, 718 (1999); *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. 130, 140 (1997); *Commissioners of Civil Serv.* v. *Municipal Court of the Brighton Dist.*, 369 Mass. 166, 173-174 (1975), cert. denied sub nom. *Patuto* v. *Commissioners of Civil Serv.*, 429 U.S. 845 (1976); *Chief of the Fire Dep't of Boston* v. *Sutherland Apartments, Inc.*, 346 Mass. 685, 690 (1964); *Matter of Dolan*, 10 Mass. Att'y Discipline Rep. 59, 62 (1994). The omission of the term "prosecution" from the last sentence of the rule is not an implied deviation from this long-standing principle. Cf. *Cousineau* v. *Laramee*, 388 Mass. 859, 862 (1983), quoting *Dexter* v. *Commissioner of Corps. & Taxation*, 316 Mass. 31, 38 (1944) ("A statute should not be interpreted to 'require a radical change . . . in the existing law [if] the act does not manifest any intent that such a change should be effected' ").

Our decision in *Matter of Concemi*, 422 Mass. 326 (1996), is not to the contrary. There we held that "the certificate of conviction is conclusive as to the conduct alleged therein," *id.* at 329,

---

[5]The text of S.J.C. Rule 4:01, § 11, as appearing in 425 Mass. 1313 (1997), provides: "The investigation or prosecution of grievances or complaints involving material allegations which are substantially similar to the material allegations of pending criminal, civil, administrative, or bar disciplinary proceedings in this or another jurisdiction shall not be deferred unless the Board or a single member designated by the chair, in its discretion, or the court, for good cause shown, shall authorize such deferment, as to which either the court or the Board may impose conditions. The acquittal of the respondent-lawyer on criminal charges, or a verdict, judgment, or ruling in the lawyer's favor in civil, administrative, or bar disciplinary proceedings shall not require abatement of a disciplinary investigation predicated upon the same or substantially similar material allegations."

and noted that "the issue of guilt or innocence is not to be relitigated in a bar discipline proceeding." *Id.* The respondent contends that the *Concemi* case prevents the initiation of any bar discipline proceeding once the attorney has been acquitted of a related criminal charge. Rather, it stands for the limited proposition that respect for the criminal justice system precludes relitigation during a bar disciplinary prosecution of facts conclusively decided in a criminal trial.

The judge in the United States District Court did not conclusively find facts that would require that the bar discipline proceedings be decided in the respondent's favor. In the Federal court he was charged with making false statements to a federally insured bank. He was acquitted because there was no proof that the respondent made the statements to a federally insured bank. Thus, the fraudulent nature of the respondent's statements was not conclusively determined by the judgment of acquittal. Therefore, bar counsel could properly litigate the respondent's knowledge and intent before the board.

3. *Substantial evidence.* We review the determination of the board only to determine whether it is supported by substantial evidence in the record. See G. L. c. 30A, § 14 (7) (*e*). " 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). The scope of our inquiry is limited. While we review the entire record and consider whatever detracts from the weight of the board's conclusion, as long as there is substantial evidence, we do not disturb the board's finding, even if we would have come to a different conclusion if considering the matter de novo. See *Arthurs* v. *Board of Registration in Medicine*, 383 Mass. 299, 304 (1981). The thrust of our inquiry is to determine by what process and by what evidence the board reached its ultimate conclusion.

The hearing committee heard live testimony and considered documentary evidence and substantial portions of transcripts from the respondent's criminal trial.[6]

It was not improper for the committee to rely on transcripts from the criminal trial in reaching its conclusion. The admissibility of evidence in board proceedings is governed by the

---

[6]The hearing committee conducted five days of hearings on March 20, 21, 25; April 23; and May 5, 1997.

State Administrative Procedure Act.[7] G. L. c. 30A, § 11 (2). See *Matter of Tobin*, 417 Mass. 92, 102 (1994); Board of Bar Overseers Rules § 3.39 (1999). Massachusetts appellate decisions have repeatedly permitted administrative agencies to consider transcripts of other proceedings in reaching determinations. See *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. 130, 138 & n.6 (1997); *Embers of Salisbury, Inc.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 526, 528-530 (1988); *Vaspourakan, Ltd.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 347, 354 (1987); *Civil Serv. Comm'n* v. *Boston Mun. Court Dep't*, 27 Mass. App. Ct. 343, 349 (1989); *Dolphino Corp.* v. *Alcoholic Beverages Control Comm'n*, 29 Mass. App. Ct. 954, 955 (1990). The question we address is not whether the criminal transcript is hearsay in the technical sense but whether it contains sufficient indicia of reliability that it has probative value. See *Embers of Salisbury, Inc.* v. *Alcoholic Beverages Control Comm'n, supra* at 530.

Here, the declarants were testifying under oath on a contested issue in the criminal trial and were subject to a vigorous cross-examination by the respondent's attorney. There was sufficient indicia of reliability for the hearing committee to rely on the transcript.

The respondent contends that the trial testimony contains internal contradictions and the board cannot choose which version of facts to believe.[8] We agree that an administrative agency cannot choose to believe one version of testimony without a reasonable basis for its choice. Cf. *Merisme* v. *Board of Appeals on Motor Vehicle Liab. Policies & Bonds*, 27 Mass. App. Ct. 470 (1989) (agency decision was not supported by substantial

---

[7]General Laws c. 30A, § 11 (2), provides: "Unless otherwise provided by any law, agencies need not observe the rules of evidence observed by courts . . . . Evidence may be admitted and given probative effect only if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs. . . ."

[8]For example, Charles McCormick testified that, during one of the closings he said, "what [he] liked about this property, [was] with the second that it was a no-money-down deal." And the respondent answered, "I am not supposed to know that."

Brendan Greene, a condominium unit purchaser, testified that Attorney Thomas Behenna was present at his December 1 closing and that, when second mortgages were mentioned, the respondent deferred to Behenna. The respondent's paralegal testified that the respondent was playing racquetball and was not present at the Greene closing.

evidence where agency relied solely on contested police accident report).

In this case, however, there is ample support for the board's reliance on the transcript.[9] The board identified corroborating testimony of witnesses at the trial. The board observed that each witness had or heard a conversation regarding secondary financing while the respondent was present. Several witnesses also testified that they were present when the respondent stated that he could not "hear" about secondary financing. The respondent also chose not to utilize his right to subpoena any of the witnesses before the committee. His failure to challenge the transcript during the hearing gives added credibility to the transcripts because it suggests that the respondent believed there was no basis to challenge the assertions in the trial record. See *School Comm. of Brockton* v. *Massachusetts Comm'n Against Discrimination*, 423 Mass. 7, 15-16 (1996) (school committee's failure to subpoena and to cross-examine physicians whose letters were admitted at administrative proceeding was indication of reliability of evidence); *Embers of Salisbury* v. *Alcoholic Beverages Control Comm'n, supra* at 531 (party who failed to call witness whose criminal transcript was introduced in evidence "cannot be heard to complain of the consequences").

The board also relied on live testimony before the hearing committee. Behenna's testimony before the hearing committee supports the board's version of facts over conflicting versions which appear in the criminal transcript. There is conflicting testimony in the transcript whether the respondent was present at Greene's closing on December 1. See note 8, *supra*. Behenna testified that the respondent was present at the closing and that second mortgaging was discussed.[10] The committee also heard testimony from the respondent and determined that his denial of

---

[9]The board is not precluded from considering the transcript of the criminal trial even though the respondent was not convicted of the charges. See *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. 130, 133, 143 (1997) (board consideration of transcript in which defendant acquitted proper).

[10]The respondent argues that Behenna's testimony cannot be credited because he is a convicted felon and may have been influenced by bias. This argument was foreclosed by our decision in *Doherty* v. *Retirement Bd. of Medford, supra* at 141. In *Doherty*, the agency relied on the trial transcript testimony of Joseph Bangs, a police officer and prosecution witness. In response to an argument that Bangs's testimony could not be credited, we noted, "Although Bangs may have been a man of unsavory character, and his cross-examination testimony reveals strong indication of bias, the board was

having knowledge of the secondary financing scheme was not credible.[11] Based on the hearing committee's extensive consideration of the transcript testimony and the supporting live testimony, we conclude that the board's decision was supported by substantial evidence.

4. *Disposition.* We review the sanction imposed by the single justice to determine, "whether the judgment is markedly disparate from those ordinarily entered by the various single justices in similar cases." *Matter of Kerlinsky*, 428 Mass. 656, 664 (1999), quoting *Matter of Clooney*, 403 Mass. 654, 658 (1988). The respondent was suspended for two years for making false statements and material omissions. The respondent was not disbarred because he was not convicted of a crime. See *Matter of Concemi*, 422 Mass. 326, 329 (1996) ("disbarment or indefinite suspension is the usual sanction imposed for a felony conviction"). However, cases involving the making of false statements are dealt with seriously because of "the effect upon, and perception of, the public and the bar." *Matter of McInerney*, 389 Mass. 528, 535 (1983), quoting *Matter of Alter*, 389 Mass. 53, 56 (1983).

The facts of this case are closely related to *Matter of Eastwood*, 10 Mass. Att'y Discipline Rep. 70 (1994). Eastwood closed two mortgage loans in which secondary financing was not recorded on the closing documents. He did not know until the closings that the buyers were giving a second mortgage to

---

entitled to find his account . . . credible. While Bangs may have had an incentive to fabricate his testimony, '[t]his contention . . . goes to the credibility of and the weight to be given such testimony . . . and we cannot say, as matter of law, that [Bangs's] testimony was insufficient to support the [board's] finding.' " *Id.* at 141, quoting *Embers of Salisbury* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 526, 530 (1988). Similarly, the fact that Behenna was convicted of a felony in relation to the condominium deal and may have had a desire to offer certain testimony to protect his sister who was also involved in the scandal are matters for the board to weigh in making determinations but do not, as matter of law, preclude the board from relying on his testimony. We note that, unlike Bangs, Behenna testified in person and thus the hearing committee was able to view his testimony to determine whether it was credible.

[11]The respondent contends that, even if the board could conclude that he was present and heard the secondary financing conversations, there is no evidence that he knew the context of the conversations. Rule 9.1 (f) of the Massachusetts Rules of Professional Conduct, 426 Mass. 1432 (1998), provides that "[a] person's knowledge may be inferred from circumstances." The evidence in this case was more than sufficient for the board to infer that the respondent had knowledge of the improper secondary financing.

the seller. *Id.* at 72-73. The single justice imposed a one-year suspension.[12] *Id.* at 75. In this case, there were numerous improper loans and the respondent had knowledge of the secondary financing scheme well before most of the closings occurred. Like Eastwood, the respondent had substantial experience as a real estate attorney. Cf. *Matter of Franchitto*, 12 Mass. Att'y Discipline Rep. 180 (1996) (nine-month suspension for inexperienced attorney who signed closing documents that did not disclose second mortgages). We conclude that a more severe sanction than imposed in *Matter of Eastwood, supra,* is warranted. Thus, we conclude that a two-year suspension is appropriate. Accordingly, we affirm the order of the single justice.

*So ordered.*

---

[12]The single justice noted that he would have favored a two-year suspension. *Matter of Eastwood,* 10 Mass. Att'y Discipline Rep. 70, 75 (1994).