IN THE MATTER OF EDMUND M. HURLEY.

Suffolk. May 5, 1994. - September 12, 1994.

Present: LIACOS, C.J., WILKINS, NOLAN, & GREANEY, JJ.

*Attorney at Law*, Disciplinary proceeding, Suspension.

An attorney, suspended indefinitely from the practice of law in the Commonwealth pursuant to an order of a single justice of this court for his conviction of a serious Federal felony, did not demonstrate that the Board of Bar Overseers or the single justice, in recommending or imposing the sanction, relied on anything other than the wording of the indictment, the language of the statute under which the respondent was charged, and the record of proceedings submitted to this court. [653-654]

The indefinite suspension of an attorney from the practice of law for his conviction of the felony of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, was a sanction not markedly disparate from the sanctions imposed in other factually similar cases. [654-656]

There was no support in the record of bar disciplinary proceedings for the respondent attorney's claim that the disciplinary action was based on factual allegations outside of the conduct that had resulted in the attorney's conviction on an indictment for violation of 18 U.S.C. § 371. [656]

Conduct of an attorney that resulted in his conviction under 18 U.S.C. § 371 for the felony of conspiracy to defraud the United States constituted a violation of Supreme Judicial Court Rule 3:07, Canon 1, DR 1-102 (A) (4) and (6) and warranted the imposition of sanctions. [656-657]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on June 12, 1990.

The case was heard by *Lynch*, J.

*Albert F. Cullen, Jr.*, for the respondent.

*Terence M. Troyer*, Assistant Bar Counsel.

LIACOS, C.J. The respondent, Edmund M. Hurley, appeals from an order of a single justice suspending him indefinitely

from the practice of law in the Commonwealth. We consider whether indefinite suspension is the appropriate sanction to impose on an attorney convicted of the felony of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (1988). We conclude that it is. Therefore, we affirm.

We summarize the facts underlying this disciplinary action as they were submitted to us in an information filed in the county court by the Board of Bar Overseers (Board).[1] The respondent was admitted to the bar of the Commonwealth on November 14, 1963. He began his practice with and later became partner of the firm Crane, Inker & Oteri. During his time at Crane, Inker & Oteri, the respondent became acquainted with one Salvatore "Mike" Caruana. In 1975, the respondent began a solo practice which he continued until 1981. From 1981 until the time of his temporary suspension by a single justice in 1992, the respondent represented Caruana in various civil matters.

The hearing panel made the following statement in its report:

> "Some of the business steered by Caruana to the Respondent involved loans being made from Bahamian interests to borrowers in New England. It was Mr. Hurley's duty to investigate their credit worthiness by checking on assets and available security, preparing documents and dealing with the participants involved. He made at least eight trips to the Bahamas, sometimes flying with Caruana on his private plane. At times, he stayed at Caruana's home.

> "Some of the transactions involved large amounts of cash being exchanged in his presence. On one occasion, $400,000.00 cash, in a silver suitcase, was exchanged for an interest in a hotel. On another occasion, a brown

---

[1]The information incorporated the report of the hearing panel convened pursuant to S.J.C. Rule 4:01, § 8 (2), as amended, 394 Mass. 1108 (1985).

bag was passed, . . . alleged [to have] contained
$25,000.00."

Caruana paid the respondent for his services but the respondent did not participate in the illegal profits obtained by Caruana,[2] although he did enjoy certain other benefits, such as trips to the Bahamas.

The respondent was charged with various crimes in a fifteen-count indictment handed down by a Federal grand jury. *United States* v. *Hurley*, 957 F.2d 1 (1st Cir. 1992). All but two counts of the indictment were dismissed by a judge of the United States District Court. *Id.* at 2. The respondent was convicted by a jury on the count which had charged him with conspiracy to defraud the Internal Revenue Service in violation of 18 U.S.C. § 371.[3] His conviction was affirmed by the United States Court of Appeals for the First Circuit, *id.* at 8, and the United States Supreme Court denied his petition for writ of certiorari. *Hurley* v. *United States*, 113 S. Ct. 60 (1992). The respondent was incarcerated for five months and placed on probation until February, 1994.

Bar counsel filed a petition for discipline with the Board in June, 1990. All proceedings were stayed pending the resolution of the respondent's appeal of his Federal conviction. The respondent was temporarily suspended from the practice of law by a single justice of this court on June 5, 1992. Later, a

---

[2]Caruana allegedly was a drug smuggler. He was indicted along with the respondent but remains a fugitive from justice.

[3]The indictment read:

"Beginning no later than October 31, 1978 and continuing until at least April 1987, at Boston, Brookline, Peabody, Plymouth, Rockland, Newton, and elsewhere in the District of Massachusetts; . . . and at other locations . . ., [the respondent and six others], defendants herein, did knowingly, willfully and intentionally combine, conspire, confederate and agree, with each other and with other persons known and unknown to the grand jury, . . . to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the Internal Revenue Service of the Treasury Department, an agency of the United States, in the ascertainment, computation, and collection of income taxes owed by Salvatore M. Caruana."

hearing panel of the Board was convened and a hearing was held on January 5, 1993. The hearing panel's report, dated February 22, 1993, recommended to the Board that the respondent be indefinitely suspended from the practice of law in the Commonwealth. At a meeting of the Board on April 12, 1993, attended by ten members of the Board, the Board voted, by a unanimous vote of five members present and voting,[4] to adopt the report and recommendation of the hearing panel to file an information in the county court.

The Board filed an information in the county court, alleging, through adoption of the hearing panel report, that the conduct of the respondent constituted violations of S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), (6), as appearing in 382 Mass. 769-770 (1981). The information also notified this court that the respondent had been convicted of a serious crime as defined by S.J.C. Rule 4:01, § 12 (2), 365 Mass. 705 (1974).[5] Presumably in mitigation, the Board, again through its adoption of the hearing panel report, described several factors: the respondent was an ideal husband and father, especially in light of his wife's special needs; he had been a diligent, hard working, caring, competent and otherwise ethical attorney for twenty-five years; he had overwhelmingly favorable character references from several relatives, attorneys, clients and friends.

Based on the information and record of proceedings submitted to the court, the single justice issued an order suspending the respondent indefinitely from the practice of law in the Commonwealth retroactive to his temporary suspension in June, 1992. The order of the single justice provided that the respondent could become a paralegal on the completion of his term of probation. The respondent filed this appeal.

---

[4]The five other members present abstained from the vote.

[5]The respondent concedes that his conviction under 18 U.S.C. § 371 is a conviction of a serious crime for the purposes of S.J.C. Rule 4:01, § 12, 365 Mass. 704 (1974), and that some period of suspension is appropriate.

The primary issue we decide is whether the sanction imposed by the single justice on the respondent is markedly disparate from the sanctions imposed in similar cases. *Matter of Palmer*, 413 Mass. 33, 37-38 (1992). *Matter of Neitlich*, 413 Mass. 416, 421 (1992). The respondent makes a threefold argument in favor of reducing his period of suspension to a definite period of time ending at the same time as his probation ended. He argues that his conviction was for "strictly a tax offense" and should be compared to other "tax offense" cases; that the prosecutor's, the trial judge's and the First Circuit Court of Appeals' reliance, during the Federal criminal proceedings, on the phrase "money laundering" was inappropriate and tainted these disciplinary proceedings; and that evidence which may have been relevant to the counts of the indictment on which he was not convicted, but which was not relevant to the count on which he was convicted, should not have been considered in the disciplinary proceeding. The respondent also argues that his conviction of a violation of 18 U.S.C. § 371 does not constitute per se a violation of S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), (6).[6]

We consider first the respondent's argument regarding the use of the phrase "money laundering." We recognize that

---

[6]The respondent argues that the vote of the Board to file an information was void because, although ten members of the Board were present at the meeting when the vote occurred, only five members voted, the others having recused themselves. Since we are reviewing the appropriateness of the order of the single justice, we need not consider asserted errors occurring during the proceedings of the Board.

In the interest of removing any doubt which may exist, however, we note that S.J.C. Rule 4:01, § 5 (2), as amended, 411 Mass. 1315 (1991), provides, in pertinent part, that "[t]he Board shall act only with the concurrence of a majority of the Board who are *present and voting* provided, however, that a quorum . . . shall be constituted of a majority of the Board" (emphasis added). This language is clear that a meeting of the Board may be convened only when a majority of the Board's members are present, but the Board may take action at a duly convened meeting with a vote of less than a majority of the total members of the Board: only a majority of Board members who are both present and voting is required. To conclude otherwise would render the Board powerless to act in cases where several of the Board's members find it necessary to recuse themselves from a particular vote.

both the United States District Court and the Court of Appeals for the First Circuit judges used "money laundering" to describe the activity which the respondent assisted. See, e.g., *Hurley*, 957 F.2d at 2. We need not consider here the appropriateness of the use of that phrase in the criminal proceeding. Any grievance the respondent may have had in that proceeding has been raised unsuccessfully in the Federal courts and we have no basis to reconsider such arguments. Our concern here is only in regard to the disciplinary proceeding resulting in the order of indefinite suspension imposed by the single justice.

The respondent has not directed us to any reference in the proceedings before the single justice or before the Board to "money laundering."[7] Our review of the record, including the information and the report of the hearing panel, discloses that there were a few references to the allegation that Caruana "launder[ed]" the profits of his drug trade. The references to the conduct of respondent, however, were phrased in the language of the indictment. In his brief, bar counsel argues that respondent's conduct appropriately was characterized as assisting the laundering of money. Nevertheless, we do not believe, as the respondent argues, that the Board and single justice based their recommendation and imposition, respectively, of sanctions on some theory of "money laundering". The respondent simply has not shown that the Board and the single justice relied on anything other than the wording of the indictment and the language of the statute under which the respondent was charged, as well as on the factual background that we have set forth.

We turn to the respondent's argument that we should consider only other "tax offenses" in deciding whether the disciplinary sanction imposed on him was markedly disparate from the sanction imposed by other single justices in similar cases. Our short answer to this argument is that the appro-

---

[7]The references in the respondent's brief discussing the money laundering issue refer to the respondent's petition for writ of certiorari to the United States Supreme Court, not to any proceeding before the single justice or the Board.

priate level of sanctions does not depend on the catch-phrase that might be used to describe the conduct on which those sanctions are grounded. It is irrelevant to us, and we assume it was to the single justice, whether the respondent's conduct could be labelled a "tax offense" or "money laundering." Instead, we look at the sanctions imposed in factually similar cases, regardless of the label which may be attached to the conduct underlying those cases.

This court's decision in *Matter of Knox*, 412 Mass. 569, 570-571 (1992), is helpful in our analysis here. In *Knox*, we observed that fifty-five disciplinary cases involving attorneys convicted of felonies had arisen since our decision in *Matter of Alter*, 389 Mass. 153 (1983). *Knox*, *supra* at 570-571. Of those fifty-five attorneys, thirty-eight either were disbarred or resigned in lieu of disbarment. *Id.* at 570-571 nn.1, 2, 3. Thus, respondent received a more lenient sanction than did sixty-nine per cent of the attorneys convicted of felonies referred to in *Knox, supra.*

Our task is to compare similar cases to this case and see if the sanction imposed here is markedly disparate. *Palmer, supra* at 37-38. *Neitlich, supra* at 421. We need not endeavor to find perfectly analogous cases, nor must we concern ourselves with anything less than marked disparity of the sanctions imposed. Under this standard, we need go no further than *Knox, supra* at 570-571, to conclude that indefinite suspension was appropriate in this case. Nevertheless, we take note of the following cases which further support our conclusion that the sanction imposed on the respondent was not markedly disparate from that imposed in similar cases: *Matter of Norton,* 5 Mass. Att'y Discipline Rep. 272, 273 (1987) (disbarment after conviction for conspiracy to defraud the United States and another crime. "These crimes involve misconduct by the attorney in connection with his practice of law. They are serious crimes concerned with lack of truthfulness"); *Matter of Lizotte,* 6 Mass. Att'y Discipline Rep. 206, 206-207 (1990) (resignation after conviction for conspiracy to defraud the United States by impeding the Internal Revenue Service; attorney acknowledged that conduct

violated DR 1-102 (A) (4) and (6)); *Matter of Lucid*, 6 Mass. Att'y Discipline Rep. 210, 211-213 (1990) (indefinite suspension after conviction for conspiracy to defraud the United States and filing a false tax return for a client; court noted that crime was committed in connection with attorney's practice of law); *Matter of Rogers*, 7 Mass. Att'y Discipline Rep. 251, 251-252 (1991) (disbarment after conviction for conspiracy to defraud the United States and other crimes stemming from establishment of "shell corporations" in Virgin Islands and involving profits from illegal drug trade).

The respondent's third argument, that this disciplinary action should not have been based on factual allegations relating to the fourteen counts on which respondent was not convicted, bears quick disposition. Our review of the record reveals that the disciplinary proceedings focused only on the respondent's conviction for a violation of 18 U.S.C. § 371, and his conduct underlying that conviction.

The respondent's final argument is that a conviction under 18 U.S.C. § 371 is not, per se, a violation of DR 1-102 (A) (4), (5), (6).[8] The respondent goes on to argue, citing cases we need not discuss, that the term "defraud" as used in 18 U.S.C. § 371 does not really connote fraud, deceit or dishonesty.

In *Norton, supra, Lizotte, supra, Lucid, supra,* and *Rogers, supra,* the single justices variously suggested that the crime of which the respondent here was convicted involved untruthfulness and that the attorneys' unlawful conduct, arising in connection with the practice of law, warranted se-

---

[8]Supreme Judicial Court Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), (6), as appearing in 382 Mass. 769-770 (1981), provides:

"(A) A lawyer shall not: . . .
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
"(5) Engage in conduct that is prejudicial to the administration of justice.
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

vere sanctions. Thus, when we consider the respondent's conviction, we cannot agree that the attorney has not violated at least DR 1-102 (A) (4) and (6).

More importantly, however, we note that the respondent does not suggest what difference it would make even if we were to agree with his argument. Conviction of a serious crime, even if it did not constitute a violation of DR 1-102 (A) (4), (5), (6), would warrant the imposition of sanctions. See S.J.C. Rule 4:10, § 12.

We conclude that the single justice appropriately suspended the respondent indefinitely from the practice of law. Accordingly, we affirm the order of the single justice.

*So ordered.*