Fred FITANIDES

v.

CITY OF SACO, et al.

Supreme Judicial Court of Maine.

Argued Sept. 11, 1996.

Decided Oct. 30, 1996.

Fred Fitanides, Saco, pro se.

Timothy Murphy, Donna Bailey, Saco, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

CLIFFORD, Justice.

Fred Fitanides appeals from the judgment entered in the Superior Court (York County, *Crowley, J.*) affirming the decision of the Saco Zoning Board of Appeals (ZBA) upholding the Saco Planning Board's (Board) approval of a conditional use permit application for David Giarusso. Fitanides contends that the Board erred in approving the application

and not requiring Giarusso to obtain a variance, that the application did not meet the submission requirements of section 901–2 of the Saco Zoning Ordinance, and that his procedural due process rights were violated by the Board's actions. We affirm the judgment.

Giarusso operates a used car business on Route 1 in Saco in an area designated in the Saco zoning ordinance as the Business and Commercial District. In April of 1994, Giarusso applied to the Board for a conditional use permit to expand his business to include an automobile repair garage. The proposal included a 16′ × 25′ garage that was to be added to an existing structure. Fitanides owns property across Route 1 from Giarusso's lot, where he resides and from which he operates a business.

The Board met to consider Giarusso's application on May 3, 1994, and May 31, 1994. On August 16, 1994, the Board determined that the application was complete and approved the conditional use permit. Fitanides attended and participated in all the Board meetings.

On September 14, 1994, Fitanides appealed the Board's approval of the application to the ZBA. The ZBA remanded the application to the Board for findings of fact as they related to the conditional use standards.

On October 25, 1994, the Board met to consider the adoption of findings of fact with regard to Giarusso's application. The Board unanimously adopted findings of fact. Fitanides again appealed to the ZBA, and on November 30, 1994, the ZBA affirmed the Board's approval of the application. Fitanides then appealed to the Superior Court. This appeal followed the judgment affirming the ZBA's decision.

## I.

■■■ Fitanides contends that Giarusso's plan to add a repair garage to his existing used car sales lot required a variance, as opposed to a conditional use permit. He argues that pursuant to the ordinance, the lot is nonconforming, the existing structure is nonconforming, and the used car business is a nonconforming use. Because the ZBA reviewed this matter in its appellate capacity, we review directly the planning board's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Enos v. Town of Stetson,* 665 A.2d 678, 680 (Me.1995) (citing *Buker v. Town of Sweden,* 644 A.2d 1042, 1043 (Me.1994)).

The Board, in its findings of fact, found "that the proposed use is in compliance ... with [the] Ordinance," and "that all zoning requirements have been met, specifically, with respect to ... nonconformance of the lot and existing structure." The Superior Court, in a well-reasoned opinion, dealt with Fitanides's contentions as follows:

### A. Nonconforming Use

The Ordinance defines a nonconforming use as "[a] use of premises that is *not permitted* in the district in which it is located...." Ordinance, § 302 (definitions) (emphasis added). The Ordinance also provides that in the B–6 district, automobile dealers and automobile repair garages are conditional uses. *Id.* § 410–9–A. Thus, under the Ordinance, both the existing used automobile sales lot and the contemplated automobile repair garage are permitted uses in the B–6 district, not nonconforming uses....

### B. Nonconforming Lots and Nonconforming Structures

With respect to nonconforming lots, the Ordinance specifically provides that:

"A structure built on a lot prior to enactment of this Ordinance, which lot does not conform to lot area or lot frontage, may be repaired, maintained or improved, and may be enlarged in conformity with all dimensional requirements of this Ordinance, except lot area or lot frontage. If the proposed enlargement of the structure(s) cannot meet the dimensional requirements of this Ordinance a variance shall be required from the Board of Appeals."

Ordinance, § 501–2(1). A similar provision for nonconforming structures provides that:

"A structure in existence as of the effective dates of this Ordinance which does

not meet the lot and yard requirements in Section 412 may be repaired, maintained and improved. It may be enlarged and/or accessory structures may be added to the site without a variance, provided that the enlargement or accessory structure itself meets the setback and height requirements of the district in which it is located and that the enlargement or accessory structure in combination with the existing structure does not exceed the prescribed maximum lot coverage."

*Id.* § 504–1(1). Thus, § 502–2(1) provides that a structure on a *lot* that was nonconforming when the Ordinance took effect may be enlarged provided that it conforms with all dimensional requirements of the Ordinance, except lot area or lot frontage. In addition, § 504–1(1) provides that a *structure* that was nonconforming when the Ordinance took effect may be enlarged provided that *the addition* meets the minimum setback and maximum height regulations and the *total structure*, new and old combined, does not exceed the prescribed maximum lot coverage requirement. Failure to conform with these standards requires the applicant to procure a variance, not a conditional use permit, from the Planning Board.

(Emphasis in original.)

The Superior Court concluded and the record establishes that the garage to be added onto the existing structure complies with the minimum setback and maximum height requirements of the ordinance and that the total area of the structure will not cover more than 50% of the lot. Contrary to Fitanides's contention, the ordinance does not require Giarusso to obtain a variance for his automobile repair garage addition. The Board's decision is supported by evidence in the record.

## II.

█ Fitanides next contends that the submission requirements for a conditional permit were not met. Although section 901–2(1) of the ordinance sets forth a detailed list of

the submission requirements for a conditional use permit, section 901(3) gives the Board discretion to waive those requirements. The intent of the submission requirements is to insure that the Board has sufficient information before judging an application. The record reveals that the Board requested additional information from Giarusso on three separate occasions before certifying his application as complete. The Board's action was not an abuse of discretion and is supported by substantial evidence in the record.

## III.

█ Fitanides also contends that the Board lacked a quorum on October 25, 1994, when it adopted findings of fact in support of its approval of Giarusso's application. One of the four Board members present, Ray Spiers, had been absent from the May 3, 1994 public hearing on the application yet she voted on October 25, 1994 to adopt findings of fact. Fitanides contends that because Spiers could not participate in the October 25, 1994 vote, she could not be counted for purposes of the quorum calculation. Without a quorum, Fitanides argues, the Board was not properly conducting business and, therefore, the vote to adopt findings of fact violated his procedural due process rights.[1] Fitanides relies on *Pelkey v. City of Presque Isle,* 577 A.2d 341 (Me.1990). In *Pelkey,* we noted that due process requires that the Board findings be made only by those members who have heard the evidence and assessed the credibility of the witnesses. *Id.* at 343.

█ Fitanides correctly points out that Spiers should not have voted on the findings of fact. We are unpersuaded, however, by his contention that there was no quorum and that the Board was not properly conducting business. The Saco Planning Board Ordinance provides that "a quorum for the purpose of voting shall consist of four (4) members, and a simple majority of members present and voting shall be sufficient for the passage of a motion." The ordinance plainly provides that a quorum requires the attendance of at least four of the seven members of

---

1. In *Glasser v. Town of Northport,* 589 A.2d 1280 (Me.1991), we recognized that an abutting land-owner is entitled to procedural due process rights.

the Board. Once a quorum is established, only a simple majority of the Board members present and voting is required to pass a motion. Not counting Spiers's vote, there were three affirmative votes in favor of the findings of fact made by the Board. *See Murach v. Planning & Zoning Comm'n of New London,* 196 Conn. 192, 491 A.2d 1058, 1066 (1985) (when majority vote exists without vote of disqualified member, vote of disqualified member does not invalidate result). The ordinance contemplates a Board member's presence for the purpose of establishing a quorum even though eventually the member may not be voting on motions made during the meeting. Therefore, although Spiers should not have voted, she was properly counted for purposes of establishing a quorum and the Board did not deprive Fitanides of due process of law. *See In re Hurley,* 418 Mass. 649, 639 N.E.2d 705, 708–09 n. 6 (1994) (majority of board members needed for quorum but only majority of board members present and voting needed to take official board action).

The entry is:

Judgment affirmed.

All concurring.