SUPREME JUDICIAL COURT 
 
 IN THE MATTER OF EDWARD A. SARGENT

 
 Docket:
 SJC-13545
 
 
 Dates:
 April 9, 2025 - September 3, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Dewar, & Wolohojian, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Attorney at Law, Misuse of client funds, Disciplinary proceeding, Disbarment. Board of Bar Overseers. Rules of Professional Conduct
 
 

             Information filed in the Supreme Judicial Court for the county of Suffolk on April 24, 2023.
            The case was heard by Georges, J.
            Thomas C. Fallon for the respondent.
            Joseph M. Makalusky, First Assistant Bar Counsel.
            Gail F. Sullivan, pro se, amicus curiae, submitted a brief.
            GAZIANO, J.  The respondent, Edward A. Sargent, appeals from a judgment disbarring him from the practice of law entered by order of a single justice of the county court.  The matter came before the single justice after the Board of Bar Overseers (board) concluded that the respondent had intentionally misused third-party funds, resulting in deprivation to his client's medical providers, among other violations of the rules of professional conduct.  The board recommended that the respondent be disbarred, and the single justice so ordered. 
            On appeal, the respondent does not dispute that he withdrew $8,000 that did not belong to him from his Interest on Lawyers' Trust Account (IOLTA or IOLTA account) and used those funds for his own personal and business purposes.  Instead, he argues that the withdrawal of those funds did not amount to a "deprivation" because it was not clear who was entitled to the money at the time he withdrew it.  The respondent further argues that the single justice erred in concluding that none of the proffered mitigating factors were sufficient to warrant a departure from the board's recommended sanction of disbarment.  For the reasons stated below, we conclude that the respondent's conduct amounted to an actual deprivation of third-party funds, and that no mitigating factors justify a more lenient sanction.  We therefore affirm the judgment of disbarment.[1]  
            1.  Background.  a.  Facts.  We summarize the facts adopted by the board, supplemented by undisputed facts from the record.  See Matter of Angwafo, 453 Mass. 28, 29 (2009), citing Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).  
            In December 2018, the respondent was retained to represent a child and her mother in a personal injury matter.  The accident giving rise to the representation occurred on December 10, 2018, when the child was struck by a motor vehicle while crossing a street to her grandmother's house in Lynn.  She sustained serious injuries and was airlifted in a helicopter operated by New England Life Flight (NELF) to Massachusetts General Hospital (MGH) for treatment.  The child incurred medical bills in excess of $91,000.  
            The child's mother asked the respondent to represent the child.  She had previously contacted two or three other attorneys, all of whom declined the representation, purportedly because of the low chance of obtaining any significant financial recovery due to questionable liability on the part of the driver.  The mother's primary concern in seeking legal representation was to "make sure that her daughter's medical bills would be paid."  The respondent agreed to the representation. 
            Shortly thereafter, the respondent received notice from MassHealth, through which the child was insured, instructing him not to "disburse any monies received as a result of the . . . incident until the amount of our claim has been ascertained."  As the respondent knew, the child was required to assign her right to third-party payments for medical benefits to MassHealth.  See 101 Code Mass. Regs. § 613.04(8)(d) (2016).  On January 2, 2019, the respondent submitted a claim for personal injury protection (PIP) funds to the automobile insurance carrier for the driver of the vehicle that struck the child.  See G. L. c. 90, § 34M.[2]  After verifying the outstanding balances owed to NELF and MGH, on January 24, the respondent received a check for the policy limit of $8,000 in PIP funds from the carrier, which he deposited into his IOLTA on the same day.  He notified the child's mother of his receipt of the PIP funds and misrepresented that he would "hold onto [the $8,000] until [he] was sure that all the medical bills were paid."  The respondent did not notify MGH, NELF, or MassHealth of the receipt of the PIP funds despite having received bills payable to the medical providers.  
            Over the course of two months -- from January 25, 2019 (the day after he deposited the PIP funds in his IOLTA), until March 25, 2019 –- the respondent withdrew the entire $8,000 of PIP funds from his IOLTA in seventeen separate transactions.  Although he knew at the time he deposited the PIP funds that they were meant to pay for the child's outstanding medical expenses, the respondent decided not to pay for those expenses, instead using the funds for his own personal and business expenses. 
            During the period the respondent was withdrawing the PIP funds from his IOLTA, MassHealth was negotiating the child's medical bills.  By February 2019, MassHealth reached an agreement with MGH, whereby MassHealth would pay about $15,200 to MGH, and MGH would write off the remaining amount (approximately $40,500) from the child's bill.  Similarly, by March 2019, MassHealth reached an agreement with NELF, whereby MassHealth would pay about $3,800 to NELF, and NELF would write off the remaining amount (about $11,700) from the child's bill.[3]  
            In July 2019, as part of an investigation of the respondent's IOLTA transactions in other matters, bar counsel requested bank statements, accounting documents, and an explanation of the transactions at issue.  The respondent replied to the request by letter in August 2019, but did not provide all the relevant materials and did not mention the PIP funds.  Bar counsel then subpoenaed the respondent's bank records in late 2019.  The respondent, through counsel, requested an extension of time to provide the responsive documents, which bar counsel ultimately allowed.  On December 4, 2019, the day before the respondent's bank records were due to be turned over, he deposited $8,000 into the child's client account to replace the PIP funds he had previously withdrawn.  Five days later, he wrote a check to the child's mother in the amount of $8,000 directly from the IOLTA account.  
            b.  Prior proceedings.  On May 12, 2021, bar counsel filed a three-count petition for discipline against the respondent.  See S.J.C. Rule 4:01, § 8 (3), as appearing in 453 Mass. 1310 (2009).  The respondent filed his answer on July 27, 2021, and the petition was amended, with the respondent's assent, on November 4, 2021.[4]
            A two-day evidentiary hearing was held by video conference before a three-member hearing committee of the board in April 2022.  On September 23, 2022, the hearing committee issued its report, concluding that bar counsel had proved the violations alleged in all three counts of the petition.  Specifically, as to the respondent's handling and misuse of the PIP funds, the hearing committee concluded that the conduct violated Mass. R. Prof. C. 1.15 (b), as appearing in 471 Mass. 1380 (2015) (segregation of trust funds from lawyer's own property); rule 1.15 (c) (prompt notice and delivery of trust funds to third party); Mass. R. Prof. C. 8.4 (c), as appearing in 471 Mass. 1482 (2015) (conduct involving dishonesty, fraud, deceit, or misrepresentation); and rule 8.4 (h) (conduct reflecting adversely on fitness to practice law).  After finding no "significant" factors in mitigation and several factors in aggravation, the committee recommended indefinite suspension.  In recommending that sanction, the hearing committee explained:  "We recognize that we have not found significant mitigation, but to the extent that we have discretion to weigh what we have found, we elect to do so." 
            The respondent appealed to the full board.  After a hearing, the board adopted the committee's factual findings but departed from its recommended sanction.  In its decision, a majority of the board recommended that the respondent be disbarred from the practice of law, concluding that "the case law allows for only one outcome."  Two dissenting board members agreed with the hearing committee's recommendation of an indefinite suspension in lieu of disbarment, reasoning that the respondent's sincere remorse and subsequent remedial measures "may be mitigating [factors]." 
            Thereafter, an information and record of proceedings was filed in the county court pursuant to S.J.C. Rule 4:01, § 8 (6), as appearing in 453 Mass. 1310 (2009).  After a hearing, the single justice issued a memorandum of decision agreeing with the board's conclusion and ordering that the respondent be disbarred from the practice of law.  Relying on our decision in Matter of Schoepfer, 426 Mass. 183, 187 (1997), the single justice concluded that "our case law makes clear that disbarment is the appropriate sanction."  The single justice entered a judgment of disbarment, from which the respondent appealed pursuant to S.J.C. Rule 2:23, 471 Mass. 1303 (2015).  
            2.  Discussion.  "[W]e review the record to determine whether the single justice's decision is supported by substantial evidence, free from errors of law, and free from any abuse of discretion."  Matter of Tobin, 417 Mass. 92, 99 (1994).  
            The primary purpose of our disciplinary rules is to "protect the public and maintain its confidence in the integrity of the bar and the fairness and impartiality of our legal system."  Matter of Curry, 450 Mass. 503, 520-521 (2008).  To that end, where an attorney misappropriates funds held in trust, the appropriate sanction will depend on, among other factors, whether the misuse was intentional or negligent.  See Matter of Murray, 455 Mass. 872, 887 (2010).  Another critical consideration is whether the attorney further "intended to deprive the client [or third party] of funds" or actually "deprived [the client or third party] of funds (no matter what the attorney intended)."  Matter of Schoepfer, 426 Mass. at 187.  See Matter of Hilson, 448 Mass. 603, 619 (2007) ("we see no reason to treat differently an attorney who misappropriates third-party funds from the attorney who misappropriates client funds when the misconduct occurs within the practice of law").  See also Matter of Knight, 495 Mass. 1038, 1043 (2025) (distinguishing between intent to deprive and intent to misuse).  Where funds are intentionally misused with intent to deprive or with actual deprivation resulting, the presumptive sanction, as set out in Matter of Schoepfer, supra, is either indefinite suspension or disbarment from the practice of law.  The intentional misuse of funds, absent an intent to deprive or actual deprivation, "normally calls for a term suspension of appropriate length" (quotation and citation omitted).  Id.  
            a.  Deprivation.  In this appeal, while conceding that he intentionally misused the $8,000 of PIP funds, the respondent argues that his misuse did not result in deprivation, and that the presumptive sanctions therefore do not apply, because the PIP funds were not due to any party at the time he withdrew them.  Specifically, the respondent contends that the PIP funds were not due because he was not "directed by anyone to disburse the PIP funds" and because "each provider [ultimately] sought and received payment from MassHealth . . . to absolve [the respondent's] client and any other party of liability."  We disagree with both arguments. 
            A "[d]eprivation arises when an attorney's intentional use of a client's [or third party's] funds results in the unavailability of [those] funds after they have become due, and may expose the client [or third party] to a risk of harm, even if no harm actually occurs" (citation omitted).  Matter of Bailey, 439 Mass. 134, 150 (2003).[5]  Here, whether the PIP funds became "due" is governed by G. L. c. 90, § 34M, fourth par., which provides that PIP benefits "shall be due and payable as loss accrues, upon receipt of reasonable proof of the fact and amount of expenses and loss incurred."  See Fascione v. CNA Ins. Cos., 435 Mass. 88, 91 (2001) ("The statute creates a right to payment . . . on receipt of reasonable proof of the fact and amount of that loss").  As to whom an insurer pays, the statute "implicitly authorizes" direct payment to an injured person's medical provider; "[i]f, however, payment of medical expenses is made to the person injured, there immediately arises the obligation of the person injured, [also] implicit in § 34M, to pay the provider the amount received from the insurer."  Chhoeun Ny v. Metropolitan Prop. & Cas. Ins. Co., 51 Mass. App. Ct. 471, 475-476 (2001).  
            We find no error in the board's conclusion, as upheld by the single justice, that the respondent, in intentionally using the PIP funds for his own purposes, actually deprived the child's medical providers of those funds.  With respect to whether the PIP funds were due, the respondent does not contest the adequacy of the documentation (including medical bills) that he himself provided to the driver's carrier to prove loss and the amount of expenses incurred when he submitted a claim for PIP benefits on behalf of his client.  
            Thus, after receipt of the claim submitted by the respondent, the driver's carrier was obligated to "determine . . . the amount of PIP benefits due and payable."  Fascione, 435 Mass. at 93.  In turn, once that amount had been determined and delivered, the respondent was obligated to "immediately" provide those funds to the child's medical providers.  Chhoeun Ny, 51 Mass. App. Ct. at 476.  Accordingly, for purposes of determining whether a deprivation occurred, the PIP funds became due to the child's medical providers upon the respondent's receipt of those funds.  Indeed, the respondent concedes in his brief that he "should have sent all the money to [the medical providers] as soon as the PIP check arrived."  His failure to do so resulted in deprivation.  See Matter of Lemler, 18 Mass. Att'y Discipline Rep. 360, 360 (2002) (rather than distributing PIP funds to client's medical service providers, attorney "instead intentionally used the proceeds of the PIP check for personal and business uses"); Matter of Garfinkle, 18 Mass. Att'y Discipline Rep. 239, 240 (2002) (finding actual deprivation for misappropriation of PIP funds).  
            Additionally, the respondent's arguments that no deprivation occurred because he was not directed to disburse the PIP funds and because the providers were eventually "paid in full" by MassHealth are misplaced.  As to the former, no provision of the PIP statute requires that medical providers make a demand for payment beyond what was provided here.  As to the latter, regardless of what occurred after the respondent's misconduct commenced, at the time the respondent began to intentionally misuse the PIP funds, they were already due.  See Matter of Watt, 430 Mass. 232, 236 (1999).  Such conduct amounts to a deprivation "even if no harm actually occurs."  Id., citing Matter of Schoepfer, 426 Mass. at 187.  Thus, the evidence was sufficient to establish that the respondent's misuse of the PIP funds resulted in actual deprivation. 
            b.  Sanction.  We now turn to the respondent's argument that the single justice's choice of sanction was improper.  As noted previously, the single justice adopted the board's recommendation of disbarment, one of two presumptive sanctions where an attorney's intentional misuse of third-party funds results in actual deprivation.  See Matter of Hilson, 448 Mass. at 619; Matter of Schoepfer, 426 Mass. at 187.  In our review of the level of discipline imposed, while we give "no special deference" to the single justice's sanction determination, we give "substantial deference" to the board's recommendation (citation omitted).  Matter of Doyle, 429 Mass. 1013, 1013 (1999).  Even so, we are not bound by the board's recommendation.  Matter of Curry, 450 Mass. at 519.  "To ensure that a recommended disciplinary sanction achieves its desired ends" -- that is, deterrence of other attorneys and protection of the public -- "we focus our review on whether it is markedly disparate from judgments in comparable cases" (quotation and citation omitted).  Matter of Foster, 492 Mass. 724, 746 (2023).  Other cases used in our comparison need not be "perfectly analogous."  Matter of Hurley, 418 Mass. 649, 655 (1994), cert. denied, 514 U.S. 1036 (1995).  
            To determine whether marked disparity exists, we take into account "any mitigating [or aggravating] factors that may be present."  Matter of Moore, 442 Mass. 285, 291 (2004).  See Matter of Cobb, 445 Mass. 452, 479 (2005).  In our bar discipline jurisprudence, we have generally separated mitigating factors into two categories:  "typical" and "special."  Matter of Finneran, 455 Mass. 722, 735-736 (2010).  Because they are common to most cases, Matter of Foster, 492 Mass. at 748, "typical" mitigating factors are "generally not given substantial weight,"6 Matter of Finneran, supra at 735.  More specifically, typical factors do not warrant departure from presumptive sanctions.  See id ("typical mitigating circumstances . . . while relevant, do not affect the presumptive sanction" [quotations and citation omitted]); Matter of McCarthy, 416 Mass. 423, 429 (1993) (typical mitigating factors "do[] not ordinarily justify departure from the usual sanction").  
            In contrast to a "typical" mitigating factor, a "special" mitigating factor allows a departure from the presumptive sanctions entirely so that a more lenient sanction may be imposed, such as a term suspension in a case involving actual deprivation or intent to deprive.  See Matter of Foster, 492 Mass. at 749.  Generally, special mitigating factors "show[] that the lawyer who committed the misconduct acted unintentionally, had some reason beyond the attorney's voluntary control for engaging in the misconduct, or otherwise was less culpable than the category of misconduct would otherwise imply."  Board of Bar Overseers, Massachusetts Bar Discipline:  History, Practice, and Procedure 393 (2018).
            Here, in arguing the marked disparity of the sanction imposed, the respondent primarily disputes the single justice's characterization of the respondent's proffered mitigation factors.  Specifically, the respondent argues that the genuine remorse he feels for having misused the PIP funds, the severe financial and emotional distress he was experiencing at the time the misconduct occurred, and his alleged restitution of the full $8,000 in PIP funds are factors that militate in favor of indefinite suspension or a departure from the presumptive sanctions altogether.  We disagree.
            We first consider the respondent's argument that his genuine remorse as a mitigating factor warranted a lesser sanction.  Remorse falls squarely into the "typical" category of mitigating factors.  See Matter of Johnson, 444 Mass. 1002, 1004 (2005).  This is because, as the board properly noted, "we expect all respondents to feel and convey sincere, genuine remorse for their misconduct."  Thus, not only is an attorney's remorse generally insufficient on its own to warrant indefinite suspension where his or her misconduct otherwise calls for disbarment, see Matter of Doyle, 429 Mass. at 1014 n.5 (remorse "do[es] not necessarily warrant a level of discipline less than disbarment"), but a lack of remorse also can be an aggravating factor, Matter of Ablitt, 486 Mass. 1011, 1019 (2021).  Where remorse has played a role in reducing the sanction, it is typically one among various mitigating factors.  See, e.g., Matter of Doyle, supra at 1014 ("extraordinarily high level of 'typical' mitigating factors," including remorse, "tip[ped] the scale in favor of an indefinite suspension").  Here, as detailed below, there is an absence of other mitigating circumstances.  Accordingly, the mere fact that the respondent felt remorse, genuine as that feeling may be, "do[es] not warrant a lesser level of discipline" than disbarment.  Matter of Ogan, 424 Mass. 1015, 1016 (1997).  
            We next examine the respondent's argument that his financial and emotional distress should have qualified as a mitigating factor.  We have acknowledged that, in certain cases, severe financial and emotional distress may rise to the level of a "special" mitigating factor, provided that the respondent establishes that the distress caused the misconduct.  See, e.g., Matter of Sweeney, 32 Mass. Att'y Discipline Rep. 552, 566-567 (2016) (term suspension for intentional misuse of client funds resulting in deprivation, where, under "exceptional" circumstances, attorney used funds to maintain daughter's health insurance during medical emergency, believing it necessary to save daughter's life); Matter of Jebb, 24 Mass. Att'y Discipline Rep. 374, 375 (2008) (severe financial and emotional distress); Matter of Guidry, 15 Mass. Att'y Discipline Rep. 255, 256 (1999) (same, "arising from grave and acute family problems").  
            Here, while the hearing committee found that "the respondent was in significant financial and familial distress at the time he misappropriated the funds," it concluded that the respondent had failed to establish a causal link between the distress and the misconduct.  See Matter of Johnson, 444 Mass. at 1003 ("the respondent's straitened financial circumstances and personal difficulties, while substantial, were not causally related to his misconduct").  The board and the single justice both determined that the respondent's stressful circumstances, while significant, did not mitigate the misconduct.  
            We conclude that there was substantial evidence to support the finding of no causal link.  See Matter of Segal, 430 Mass. 359, 364 (1999).  With respect to the respondent's emotional distress, in contrast to the disciplinary decisions on which he relies, the circumstances underlying the respondent's distress (resulting from his parents' health issues) arose years before the misconduct occurred.  Cf. Matter of Sweeney, 32 Mass. Att'y Discipline Rep. at 566 (approximately two-month period of severe distress concurrent with misconduct); Matter of Jebb¸ 24 Mass. Att'y Discipline. Rep. at 375 (approximately one-year period of severe financial and emotional distress concurrent with misconduct).  Moreover, the respondent did not show that his misconduct coincided with an extraordinary period of financial distress.  Although the hearing committee found that the respondent was dealing with some financial difficulty in early 2019 that resulted in the respondent's late payment of rent, those financial issues appeared to actually deepen later into 2019 (well after the respondent had already misappropriated the PIP funds) and into 2020 (a year the respondent characterized as "perfect" for him financially).  Just as the respondent's familial stressors beginning "years before the misconduct . . . cannot excuse or explain abdication of professional responsibilities," Matter of Johnson, 444 Mass. at 1004, financial stressors exacerbated after his misuse of the PIP funds cannot retroactively justify his misconduct.  Last, to the extent that the respondent relies on his testimony to establish that these stressors caused his misconduct, the hearing committee implicitly discredited any such portion of his testimony.  See Matter of Hayes, 493 Mass. 1010, 1012 (2023) (hearing committee "is the sole judge of credibility" [citation omitted]).  Thus, while prolonged financial and familial distress may be sufficient to tip the scale in favor of a lesser sanction than disbarment in extraordinary circumstances, this is not such a case.  
            Finally, the respondent argues that his payment of $8,000 to the child's mother was "restitution" that should have qualified as a mitigating factor.  "Restitution is an equitable remedy by which a person who has been unjustly enriched at the expense of another is required to repay the injured party" (emphasis added).  Keller v. O'Brien, 425 Mass. 774, 778 (1997).  Restitution is a critical factor in determining whether disbarment or indefinite suspension is the appropriate sanction for intentional misuse with intent to deprive or with actual deprivation resulting.  See Matter of LiBassi, 449 Mass. 1014, 1017 (2007) ("the court generally considers whether restitution has been made in choosing between disbarment and indefinite suspension"); Matter of Dasent, 446 Mass. 1010, 1013 (2006) ("where a respondent has . . . failed to pay his client all that was due to her, the usual and presumptive sanction is disbarment").  Whether restitution justifies a reduction in sanction will depend on the totality of the circumstances, including the timing and amount of the restitution payment.  See Matter of Johnson, 452 Mass. 1010, 1012 (2008) (restitution not credited as mitigating factor where "the respondent made restitution to the first client only after a complaint was filed, and to the second client only after bar counsel became aware of the misappropriations"); Matter of LiBassi, supra (restitution not credited as mitigating factor where made as result of court action); Matter of Parigian, 33 Mass. Att'y Discipline Rep. 375, 382 (2017) ("While we certainly encourage restitution, the time and circumstances under which it is made determine whether it is mitigating").  Restitution should reflect the offending attorney's "recognition of . . . wrongdoing and the awareness of a moral duty to make amends to the best of one's ability" (citation omitted).  Matter of Corbett, 478 Mass. 1004, 1005-1006 (2017).  
            Bar counsel suggests, among other proposals, that indefinite suspension is only appropriate where an attorney has made full restitution before the commencement of disciplinary proceedings.  While timeliness should factor into the analysis, we decline to adopt a categorical rule.  As is consistent with our general approach with disciplinary matters, "[e]ach case must be decided on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances" (citation omitted).  Matter of Pudlo, 460 Mass. 400, 406 (2011).  
            Here, as discussed supra, when the respondent began withdrawing the PIP funds from his client trust account, the medical providers, not the client's mother, were entitled to payment.  See Chhoeun Ny, 51 Mass. App. Ct. at 476 (no provision in G. L. c. 90, § 34M, entitles person injured in motor vehicle accident to use of insurance monies intended for provider).  The board and the single justice correctly concluded that, because the respondent did not return the misappropriated funds to the injured party, no restitution occurred and, therefore, the respondent's payment to the child's mother does not mitigate his misconduct.  Moreover, the respondent placed the funds in the child's account the day before he was required to send bar counsel his account records.  His reason for doing so at that time was because his attorney suggested he "just get it over with."  Thus, the timing and the respondent's motive provide further reasons why his payment should not be credited as a mitigating factor. 
            We note that, in addition to the absence of any significant factors in mitigation, the single justice also considered the presence of multiple aggravating factors, which the respondent does not dispute on appeal.  Among these factors, the respondent was admitted to the practice of law in 2002; his approximately fifteen years of experience as a practicing personal injury attorney at the time the misconduct occurred is an aggravating factor.  See Matter of Luongo, 416 Mass. 308, 312 (1993) ("experienced attorney[s] should understand ethical obligations to a greater degree than a neophyte").  Additionally, the respondent's prior disciplinary record, namely, an admonishment for mismanaging his IOLTA account and commingling funds, qualifies as a "significant aggravating factor," particularly given the similarities between the misconduct at issue in this case and the misconduct for which the respondent was sanctioned in 2014.  Matter of Gross, 435 Mass. 445, 453 (2001).  Finally, the numerous other violations of the rules of professional conduct found by the board in these proceedings, which were undisputed by the respondent, are another factor in aggravation.  See Matter of Saab, 406 Mass. 315, 325-326 (1989).  
            Where the respondent has not established adequate mitigation and has several aggravating factors weighing against him, disbarment is not a markedly disparate sanction from the sanctions imposed in similar cases.  See Matter of Corbett, 478 Mass. at 1006-1007 (affirming judgment of disbarment in case of intentional deprivation with several aggravating factors and without proper restitution or other mitigating factors); Matter of LiBassi, 449 Mass. at 1016-1018 (affirming judgment of disbarment in case of actual deprivation with aggravating factors and without proper restitution).  See also Matter of Haese, 468 Mass. 1002, 1007-1008 (2014) (affirming judgment of disbarment in case of intentional conversion of client funds, with temporary deprivation resulting, where offending attorney, despite promptly making restitution, "engaged in more and wider misconduct").  
            3.  Conclusion.  After reviewing the record and considering the arguments raised by the respondent on appeal, we conclude that the single justice did not err or abuse his discretion in entering a judgment of disbarment.
Judgment affirmed.
 
footnotes

 
            [1] We acknowledge the amicus brief submitted by Gail F. Sullivan.
            [2] Part of the Commonwealth's no-fault automobile insurance law, G. L. c. 90, § 34M, requires "all motor vehicle liability policies in Massachusetts [to] provide PIP benefits," with the intent of "ensur[ing] prompt payment of claimants' medical and out-of-pocket expenses" (citation omitted).  Ortiz v. Examworks, Inc., 470 Mass. 784, 787 (2015).  As relevant here, "personal injury protection" in a motor vehicle liability policy provides coverage totaling at least $8,000 for various medical expenses incurred as a result of bodily injury sustained by a pedestrian struck by the insured's motor vehicle.  G. L. c. 90, § 34A.
            [3] In January 2020, the respondent secured an $18,500 settlement for the child's personal injury claim.  Although MassHealth claimed a lien exceeding the settlement amount, MassHealth received $9,900 as the result of negotiations with the respondent.  Of the remaining amount, the respondent received $6,166.66 pursuant to his one-third contingency fee agreement with his client and the client received $2,433.34.   
            [4] The respondent admitted to the conduct underlying counts one and two of the petition.  As to count one, the hearing committee concluded that bar counsel had established violations of Mass. R. Prof. C. 1.15 (f) (1) (B), as appearing in 471 Mass. 1380 (2015) (check register record-keeping requirements); rule 1.15 (f) (1) (C) (client ledger record-keeping requirements); rule 1.15 (f) (1) (D) (bank fee ledger requirements); rule 1.15 (f) (1) (E) (three-way reconciliation); rule 1.15 (e) (4) (prohibiting cash withdrawal from trust account); and rule 1.15 (b) (2) (prohibiting deposit of lawyer's own funds into trust accounts).  As to count two, the hearing committee concluded that bar counsel had established two violations of Mass. R. Prof. C. 1.5 (e), as amended, 480 Mass. 1315 (2018) (requiring notice to client and client's written consent to division of fee between lawyers).  Count three of the petition pertained to the respondent's misuse of the PIP funds, as described above.
            [5] The respondent does not contest the unavailability of the PIP funds or the exposure to a risk of harm.
            [6] Examples of typical factors include, but are not limited to "(1) an otherwise excellent reputation in the community and a satisfactory record at the Bar, (2) cooperation in the disciplinary proceeding and with governmental authorities, (3) the occurrence of the criminal proceedings, (4) the pressures of practice, (5) the conviction as a punishment, (6) the absence of any dishonesty, . . . and (7) in the final result, no harm to anyone else by the misconduct."  Matter of Alter, 389 Mass. 153, 157 (1983).